DECISION.
{¶ 1} Leland Doane appeals from his conviction upon a plea of no contest to a charge of possession of cocaine in violation of R.C. 2925.11(A). He asserts that the trial court erred by denying his motion to suppress evidence obtained as the result of an illegal seizure and subsequent search. We hold that the challenged evidence should have been suppressed, and, therefore, we reverse.
 {¶ 2} On May 12, 2004, Cincinnati Police Officer John Dotson detained Doane four blocks away from his residence at 1247 State Street, where the police were executing a search warrant for drugs. Dotson informed Doane of the search and warrant. He then asked Doane if he had anything on him that he should not have. Doane said no. Dotson then asked if Doane minded if he checked. Doane again said no. Dotson found a small baggie of white powder that turned out to be cocaine in Doane's left pocket. He arrested Doane and advised him of his Miranda rights. Doane then stated that the drugs were for personal use, and that he had just purchased them from someone down the street. Dotson held Doane on the street until other officers completed the search of Doane's residence. The police did not find any contraband at the residence.
 {¶ 3} Doane moved to suppress the cocaine and his statements. He argued that he was stopped without probable cause in violation of the Fourth Amendment and that any evidence obtained as the result of this illegal seizure should have been suppressed.
 The Seizure {¶ 4} The Fourth Amendment proscribes unreasonable searches and seizures.[1] To meet the reasonableness standard of theFourth Amendment, an official search or seizure of a person must ordinarily be supported by probable cause.[2] The United States Supreme Court has recognized several narrow exceptions to this rule, allowing for some seizures significantly less intrusive than an arrest so long as the police have an articulable basis for suspecting criminal activity.[3] The Court's determination that these seizures are reasonable and not in violation of the Fourth Amendment has been influenced by the important law enforcement interests justifying the intrusions.
 {¶ 5} We note that Doane was not mentioned in the warrant to search 1247 State Street or in the affidavit supporting the warrant. We have held that "[w]here * * * police officers broaden the scope of their investigative activity beyond the persons or places designated in a warrant, there must be an independent justification for the separate intrusion and that justification must relate specifically to the person or place to be searched."[4]
 {¶ 6} The trial court held that Doane's detention did not violate the reasonableness standard of the Fourth Amendment. The court based its decision on the United States Supreme Court's holding in Michigan v. Summers.[5] In Summers, the Court approved of the seizure of a person as he was descending the front steps of his residence, the house to be searched pursuant to a warrant.[6] Summers was returned and detained inside the house while officers carried out the search.[7]
The Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."[8]
 {¶ 7} The Court reasoned that limited intrusions on personal security incident to a search based upon less than probable cause may be justified by "substantial law enforcement interests * * * so long as police have an articulable basis for suspecting criminal activity."[9]
 {¶ 8} The Court identified several law enforcement interests that justify a detention on less than probable cause when police execute a search warrant: first, the prevention of harm to officers and occupants; second, the prevention of flight in the event incriminating evidence is found and the prevention of frantic efforts to conceal or destroy evidence; and finally, the orderly completion of the search, which is facilitated by the presence of the occupants.[10]
 {¶ 9} In considering the requirement that officers have an "articulable and individualized suspicion" of criminal activity, the Court held that this requirement is satisfied, at least as to "occupants," by the fact that a "neutral" judicial officer has probable cause to believe that a crime is being committed in the house.[11]
 {¶ 10} Importantly, the Court noted that the detention of a person incident to a search of his home is but an "incremental intrusion on [his] personal liberty,"[12] when compared to the "substantial invasion of [his] privacy" authorized by the warrant for his home.[13] The Court observed that "the type of detention imposed here is not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention. Moreover, because the detention * * * was in * * * [Summers's] own residence, it could add only minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station."[14] In conclusion, the Court determined that Summers's detention was substantially less intrusive than an arrest.[15]
 {¶ 11} This case is distinguishable from Summers in several important respects. First, Doane was not detained leaving his house. He was detained on a sidewalk four blocks away from his house. This is significant because the Summers court used Summers's status as an "occupant" of the house at the time of the search to connect him to the warrant issued, thereby providing the police with reasonable suspicion to detain him during the search.[16] Second, there was no testimony that Doane was returning to the house or had recently left it, or that Doane could see the police executing the warrant four blocks away. These facts minimized the threat of flight, the destruction of evidence, and the safety interests recognized in Summers.
Third, Doane was not brought back to the house to facilitate the search. His detention out on the street several blocks away from his house was much more intrusive and stigmatizing than the seizure in Summers, and the law enforcement interests were much less compelling.
 {¶ 12} The state argues that Summers does not impose a rule of geographic proximity and urges us to apply the Summers rule to justify detentions away from the searched premises. We decline to apply Summers under the facts of this case, where the unduly intrusive, off-premises detention did not advance the law enforcement interests enumerated in Summers.[17] We recognize, as did the Summers court, that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."[18] But the facts of our case indicate that safety and evidence preservation were not issues. Doane was seized a distance from the searched premises, and there was no evidence that he was aware of the search at the time of the seizure. Further, Dotson did not perform a Terry pat-down search of Doane, and he presented no testimony at the suppression hearing indicating that he feared for his safety.
 {¶ 13} The detention here was not lawful under Summers, nor could it be considered a lawful investigatory stop where Officer Dotson did not attempt to justify the detention on the basis that he was suspicious of Doane's behavior.[19] The record would not support such a finding. Doane was simply walking alone four blocks from his residence when an undercover surveillance officer radioed Dotson and informed him of Doane's location. Doane was not seen leaving the premises at the time of the search; he was not returning to the premises at the time of the search; and he was not in the vicinity of the premises during the search, acting suspiciously. Dotson did not testify that Doane was somehow connected to the drug investigation. Dotson testified that he detained Doane on the basis that his house was being searched pursuant to a warrant, and that he erroneously thought Doane was named in the search warrant.
 {¶ 14} We hold that Doane's detention four blocks from his house while the police executed a search warrant at his residence was unreasonable under these facts and in violation of hisFourth Amendment rights. We must now decide whether evidence obtained while he was unlawfully seized should have been suppressed.
 The Consent {¶ 15} The trial court refused to suppress the evidence, finding that Doane was lawfully detained and had voluntarily consented to the search that disclosed the cocaine in his left pocket. We have already held that Doane was not lawfully detained, and we hold under the facts of this case that Doane's consent was not voluntary.[20] Further, no special circumstances existed to purge the illegal detention's taint from the consent.[21]
 {¶ 16} Where a defendant has provided consent to search during an unlawful seizure, any evidence found is admissible only where the consent is voluntary and the causal chain between the illegal seizure and the consent is broken.[22] The consent is voluntary where "the totality of the circumstances * * * clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave."[23] To determine whether the causal chain between the illegal seizure and the consent has been broken, we consider factors such as "the length of time between the illegal seizure and the consent, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and whether the officers read the suspect hisMiranda rights before he consented."[24]
 {¶ 17} Doane did not testify, but Dotson's testimony indicated that Dotson and his partner had pulled up beside Doane in a marked police cruiser. Dotson detained Doane and informed him that his house was being searched pursuant to a warrant. Doane denied having any drugs on him before consenting to the search. Doane was in fact not free to leave. After analyzing the totality of the circumstances, we hold that the record does not clearly demonstrate that a reasonable person in Doane's position would have believed he had the freedom to refuse to answer questions and could in fact leave. Rather, Doane merely submitted to a claim of lawful authority. As a result, Doane's consent to search cannot be considered voluntary.[25]
 {¶ 18} Finally, Doane's consent was given contemporaneously with the illegal seizure, and we cannot say that any intervening circumstances severed the consent from the taint of the unlawful detention. Under these circumstances, the cocaine should have been suppressed.[26]
 Statements Made After Miranda Warnings {¶ 19} Our analysis does not end with the suppression of the cocaine. Doane made incriminating statements after he was arrested for possession of cocaine and informed of his Miranda
rights. After reviewing the law, we hold that these statements also should have been suppressed as the "fruit of the poisonous tree."[27]
 {¶ 20} Doane was still illegally detained at the time he was officially placed in custody, because the cocaine Dotson had found unlawfully on Doane could not have been used to establish the necessary probable cause to justify Doane's arrest.[28]
Although Doane was informed of his right against self-incrimination, Miranda warnings alone will not purge from a confession the taint of an unlawful seizure or search.[29] In order for incriminating statements to be admissible, they must be considered "an act of free will [sufficient] to purge the primary taint of the unlawful invasion."[30]
 {¶ 21} Doane made the statements on the street immediately after he was officially placed into custody. The state failed to show a meaningful event that dissipated the taint of the unlawful seizure. Under these circumstances, we hold that Doane's confession was derivative of Dotson's unlawful expansion of the search warrant, and that the confession should have been suppressed.[31]
 {¶ 22} In conclusion, we hold that Doane was unlawfully seized and searched, and we sustain the assignment of errors. We accordingly reverse Doane's conviction and remand this case for further proceedings in accordance with the law.
Judgment reversed and case remanded.
Doan, P.J., and Sundermann, J., concur.
[1] Fourth Amendment to the United States Constitution. See, also, Section 14, Article I, of the Ohio Constitution.
[2] Id.; Dunaway v. New York (1979), 442 U.S. 200,99 S.Ct. 2248.
[3] See United States v. Brignoni-Ponce (1975), 422 U.S. 873,95 S.Ct. 2574; Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868.
[4] State v. Donahue (June 17, 1987), 1st Dist. No. C-860458, citing State v. Walls (June 10, 1981), 1st Dist. No. C-800447.
[5] (1981), 452 U.S. 692, 101 S.Ct. 2587.
[6] Id. at 693.
[7] Id.
[8] Id. at 705.
[9] Id. at 699.
[10] Id. at 702.
[11] Id. at 703-704.
[12] Id. at 703.
[13] Id. at 701.
[14] Id. at 701-702 (footnotes omitted).
[15] Id. at 702.
[16] Id. at 703-704.
[17] See, e.g., United States v. Sherill (C.A.8, 1994),27 F.3d 344, 346 (Summers not extended to justify detention occurring only one block away from premises to be searched, where distance from premises made intrusiveness greater, and officers had no interest in preventing flight or minimizing safety risks as the suspect had left the area and was unaware of the warrant);State v. Campos (Aug. 30, 1996), Lucas App. No. L-96-010 (stop of resident's car after she drove by her residence during the execution of a search warrant was not reasonable where stop did not further law enforcement interests relied upon in Summers). Compare United States v. Cochran (C.A.6, 1991), 939 F.2d 337
(authorizing the seizure of resident in his automobile shortly after he left his residence, where police desired resident's help in completing a warrantbased search of his premises).
[18] Summers at 702.
[19] See Donahue, supra.
[20] See State v. Robinette, 80 Ohio St.3d 234,1997-Ohio-343, 685 N.E.2d 762.
[21] See Florida v. Royer (1983), 460 U.S. 491, 501,103 S.Ct. 1319.
[22] United States v. Lopez-Arias (C.A.6, 2003),344 F.3d 623, 628.
[23] Robinette at paragraph three of the syllabus.
[24] Lopez-Arias at 630.
[25] See Robinette at 245.
[26] Lopez-Arias at 630-631.
[27] Wong Sun v. United States (1963), 371 U.S. 471, 488,83 S.Ct. 407.
[28] Sibron v. New York (1968), 392 U.S. 40, 63,88 S.Ct. 1889.
[29] Brown v. Illinois (1975), 422 U.S. 590, 603,95 S.Ct. 2254.
[30] Kuapp v. Texas (2003), 538 U.S. 626, 632-633,123 S.Ct. 1843 (citing Wong Sun v. United States [1963], 371 U.S. 471,486, 83 S.Ct. 407, internal footnotes omitted); see alsoLopez-Arias at 630.
[31] See Kuapp at 633.