OPINION
{¶ 1} Defendant-appellant, Robert L. McClendon, appeals the decision of the Fayette County Court of Common Pleas denying his motion to suppress and his subsequent felony conviction for possession of crack cocaine. We affirm.
 {¶ 2} During the evening of July 26, 2005, an affidavit for a search warrant was submitted to the judge of the Fayette County Court of Common Pleas. The signing affiant was Officer Jeff Funari of the Washington Court House Police Department. The affidavit *Page 2 
requested authority to search appellant's residence located at 639 Harrison Street, Washington Court House, Ohio, for drugs.
 {¶ 3} The supporting facts contained in the affidavit stated, in part, that the police received information from a reliable confidential informant that appellant had been selling crack cocaine from his residence. A black male from Columbus delivers the crack cocaine to appellant. Within the thirty days prior to the signing of the affidavit, Officer Funari conducted two controlled purchases of crack cocaine from appellant through the use of a reliable confidential informant. Additionally, the affidavit stated that the confidential informant advised Officer Funari that the black male from Columbus had delivered a quantity of crack cocaine to appellant on July 26. As a result, the officer requested a night time search warrant to be executed that evening.
 {¶ 4} Based on the facts presented, the judge issued a warrant to search appellant's residence that evening. The warrant also provided that officers could search "any person found on the premises."
 {¶ 5} At approximately 9:00 p.m., officers from the Washington Court House Police Department posted outside of appellant's residence. Officer Funari observed appellant arrive at the residence in a brown vehicle with a black male and the pair went into the house. Shortly thereafter, a mini van arrived and parked in the street in front of the residence. Appellant was observed walking out of the residence and up to the driver's side of the van to speak to the occupants, whom were later identified as appellant's parents. While appellant was standing in the street next to the van, the officers approached to execute the warrant. Appellant was ordered against the van, placed in handcuffs and readMiranda warnings. The lead officer, Eric Hott, conducted a pat-down search of appellant. While conducting the pat-down, Officer Hott felt a "hard bulge" in appellant's left pants pocket. The officer removed the item, which proved to be two baggies containing crack cocaine. *Page 3 
 {¶ 6} Appellant was indicted for possession of crack cocaine in violation of R.C. 2925.11(C)(4)(b). Appellant filed a motion to suppress the evidence obtained by the search. Following a suppression hearing, the trial court denied the motion. As a result, on May 17, 2006, appellant entered a no contest plea to the charge. The trial court found appellant guilty and sentenced him to eight months in prison, to be served concurrent with a sentence for another offense. Appellant timely appealed, raising four assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING AN INVASIVE `PAT DOWN' SEARCH, WHERE THE `ALL PERSON'S [sic] ON THE PREMISES' WARRANT DID NOT MEET THE STANDARDS SET FORTH IN STATE V. KINNEY."
 {¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, a reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. An appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court erred in applying the substantive law to the facts of the case. State v. Williams (1993), 86 Ohio App.3d 37, 41.
 {¶ 10} In his first assignment of error, appellant contests the validity of the search warrant. Specifically, he argues the warrant in this case does not meet the criteria for an "all persons" warrant pursuant to State v. Kinney (1998), 83 Ohio St.3d 85.
 {¶ 11} The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable *Page 4 
searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 12} In State v. Kinney, the Supreme Court of Ohio held that "all persons on the premises" warrants are valid and do not violate theFourth Amendment in limited circumstances. Id. at 90. "Where there is probable cause to support the search of every person within the warrant's scope, [an all persons on the premises warrant] will not be held invalid." Id. "Probable cause will more likely exist to support the search of all persons within a private residence than it will for a search of all persons in a place open to the public." Id. at 91.
 {¶ 13} In addition to probable cause, the court in Kinney also mandated a particularity requirement. "An `all persons' clause may still be carefully tailored to its justifications if probable cause to search exists against each individual who fits within the class of persons described in the warrant. The controlling inquiry is whether the requesting authority has shown probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant. If such probable cause is shown, an `all persons' provision does not violate the particularity requirement of the Fourth Amendment." Id.
 {¶ 14} Finally, the court stated "all persons" warrants are often appropriate in situations involving drug transactions. "Individuals who are present in a drug trafficking residence raise special concerns for law enforcement." Id. at 90. "A search for illegal drugs is more likely to support a search of all persons than a search for evidence of many other crimes." Id. at 91. "Nevertheless, although drug sales from a residence are more likely to create probable cause for a search of all persons within, we reject a per se rule that would find probable cause in all such cases." Id. at 94. *Page 5 
 {¶ 15} In this instance, the trial court examined the affidavit of Officer Funari to determine whether probable cause and particularity existed. The affidavit contained information that within the thirty days prior to the issuance of the warrant, appellant sold crack cocaine from his residence, a reliable confidential informant purchased crack cocaine from appellant twice, crack cocaine was delivered to appellant by a black male from Columbus, and on July 26, 2005, the black male from Columbus was at appellant's residence to deliver crack cocaine. As a result, the trial court held that probable cause existed for the warrant.
 {¶ 16} Additionally, the trial court examined the particularity requirement of Kinney. The trial court held, "[b]ased on these facts, the Washington Court House Police Department has shown probable cause that every individual" at appellant's residence "would be in possession of, at the time of the search, evidence of the kind sought in the warrant." Based on the facts and circumstances provided and the trial court's consideration of the Kinney factors, the trial court did not err in finding the search warrant was valid. Appellant's first assignment of error is overruled.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS, WHERE THE STATE ASSERTED THE WARRANT WAS AN `ALL PERSON'S [sic] ON THE PREMISES WARRANT' AND THE APPELLANT WAS NEITHER ENCOUNTERED, ARRESTED, NOR SEARCHED ON THE PREMISES."
 {¶ 19} Appellant argues in his second assignment of error that he could not be searched pursuant to the "all persons on the premises" warrant because he was not "on the premises" at the time the warrant was executed. Appellant cites the fact that he was standing on the street at the time he was detained by the police and searched. As a result, appellant claims he cannot be linked as an occupant of the house because he was not "observed, encountered, nor ultimately searched in a location that can validly be called `on the *Page 6 
premises.'"
 {¶ 20} Appellant cites State v. Doane, Hamilton App. No. C-040523,2005-Ohio-2740, in support of his argument. In Doane, officers from the Cincinnati police department obtained a warrant to search Doane's residence for drugs. Id. at ¶ 5. Upon execution of the warrant, Doane was detained four blocks from the residence and searched by an officer. Id. The officer found a small baggie of cocaine in Doane's pocket. Id. The First District held that Doane's "detention four blocks from his house while the police executed a search warrant at his residence was unreasonable under these facts and in violation of his Fourth Amendment rights." Id. at ¶ 14.
 {¶ 21} Appellant's reliance on Doane is misplaced as the facts are substantially different from those in the case at bar. Doane was not in the vicinity of the premises at the time the warrant was executed. Id at ¶ 13. As the First District noted, "Doane was not seen leaving the premises at the time of the search; he was not returning to the premises at the time of the search; and he was not * * * acting suspiciously." Id. Further, the arresting officer testified that he detained Doane on the basis that his house was being searched pursuant to the warrant, and that he erroneously thought Doane was named in the search warrant. Id.
 {¶ 22} Rather, the facts of this case are similar to those inState v. Forts (1995), 107 Ohio App.3d 403. In Forts, drug enforcement agents obtained a warrant to search Forts' residence. Id. at 404. The warrant permitted officers to search "said residence and on the person of anyone found in the residence." Id. After parking her car in an alley adjacent to the residence, Forts walked towards the residence and officers arrested and searched her in the alley. Id. The search of Fort's purse produced crack cocaine, a crack pipe, and a hemostat with cotton. Id. The Ninth District Court of Appeals held that even though Forts was not "in" the residence, the detention and subsequent search fell within the scope of the warrant. Id. at 406, citing State v.Cancel (June 28, 1990), Cuyahoga App. No. 56727. The court stated, *Page 7 
"[t]he thrust of Cancel permits a search beyond the literal command portion of the warrant when the object of the search is reasonably identifiable with the purpose of the warrant." Id. "Forts * * * was heading back to the scene of the crime and was stopped only several feet from the entrance. Moreover, the evidence indicated that Forts was in fact heading back into the residence. We cannot say that the police would have to wait for Forts to enter the residence in order to conduct a search under the authority of the warrant. Because Forts was reasonably connected with drug sales at the residence and was located only several feet from the residence, the police did not violate herFourth Amendment rights by conducting the search." Id. See, also,United States v. Cochran (C.A.6, 1991), 939 F.2d 337.
 {¶ 23} In this case, the warrant was issued at 7:43 p.m. and was executed around 9:00 p.m. After the warrant was issued, appellant was observed on the premises. Officer Funari testified at the suppression hearing that after the warrant was issued, he observed appellant and another black male arrive at appellant's residence and go inside the house. Officer Funari also testified that he then observed a van park in front of appellant's residence and appellant walked out to meet the van.
 {¶ 24} In denying appellant's motion to suppress, the trial court noted that "Patrolman Funari observed the defendant and another black male arrive at 639 Harrison Street in a brown car and go into the residence. Shortly before the search team arrived, Patrolman Funari observed a mini van arrive and park at the south part of the residence. Patrolman Funari observed the defendant leave the residence and walk to the van. * * * The distance from the van to the front door of the house was approximately twenty feet."
 {¶ 25} In Officer Funari's affidavit, appellant was specifically identified as the suspected drug dealer. Further, the warrant authorized the search of "any person found on the premises" and appellant was clearly observed on the subject premises.
 {¶ 26} As in Forts, although appellant was not "on the premises" at the time of the *Page 8 
detainment, the scope of the warrant permitted the officers to search appellant because appellant was observed on the premises immediately prior to the execution of the warrant. Further, when appellant was detained by the officers, he was approximately twenty feet from the front door of the house and only a few feet from the property.
 {¶ 27} Due to Officer Funari's observation of appellant on the premises immediately prior to the execution of the warrant and the proximity of appellant to the premises, the police did not violate appellant's Fourth Amendment rights by detaining him and conducting the search. Accordingly, the trial court did not err in denying appellant's motion to suppress. Appellant's second assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING AN ALLEGED `PROTECTIVE SEARCH,' WHERE THE OFFICER COULD NOT ARTICULATE THE FACTS GIVING RISE TO A REASONABLE SUSPICION OF DANGER AS REQUIRED BY THE TERRY DOCTRINE, AND THE OFFICER IS UNABLE TO DESCRIBE THE ITEM HE FELT IN THE SUSPECT'S POCKET THEREBY FAILING TO SHOW THAT THE NATURE OF THE OBJECT WAS `IMMEDIATELY APPARENT' UNDER THE `PLAIN FEEL' EXCEPTION TO TERRY."
 {¶ 30} Officer Hott testified at the suppression hearing that he felt a "hard bulge" in appellant's left pants pocket while conducting the pat-down search, but he could not identify the item as drugs until the baggies containing crack cocaine were removed. As a result, appellant argues in his third assignment of error that the search of appellant cannot be upheld as a "protective search" pursuant to Terry v. Ohio
(1968), 392 U.S. 1. Specifically, appellant argues that since the officer conducting the search could not identify that the object in appellant's pocket was crack cocaine by "plain feel," the search was unconstitutional.
 {¶ 31} In Terry, the United States Supreme Court held that police may briefly stop and *Page 9 
detain an individual, without an arrest warrant or probable cause for an arrest, in order to investigate a reasonable suspicion of criminal activity. Id. at 21. Under Terry, if a law enforcement officer develops a reasonable suspicion and detains the individual to investigate, the officer may conduct a protective search to determine if the individual has any concealed weapons. Id. at 27. Further, while conducting theTerry search, "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, [such as drugs], there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." Minnesota v. Dickerson (1998), 508 U.S. 366, 375.
 {¶ 32} Appellant's argument in his third assignment of error is unpersuasive. The search in this case was not a "protective search" pursuant to Terry. Rather, as we examined above, Officer Hott had authority to detain and search appellant pursuant to the "all persons" warrant. Accordingly, appellant's third assignment of error is overruled.
 {¶ 33} Assignment of Error No. 4:
 {¶ 34} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED DURING A SEARCH, WHERE THE APPELLANT'S ARREST WAS NOT SUPPORTED BY PROBABLE CAUSE, THE SEARCH PRECEEDED THE ARREST, AND THE FRUITS OF THE SEARCH WERE USED TO SUPPORT PROBABLE CAUSE FOR THE ARREST."
 {¶ 35} Appellant argues in his fourth assignment of error that the officers placed appellant under arrest without probable cause. Appellant cites testimony from the suppression hearing that the officers considered appellant was engaged in criminal activities if he were "talking to anybody, anytime in any van." Appellant claims the police should have been required to obtain an arrest warrant in order to arrest and search him rather than obtaining the "all persons on the premises" warrant. Appellant further urges "while it may be *Page 10 
argued that the warrant authorized the officers to detain McClendon, it did not authorize them to arrest him on sight."
 {¶ 36} Appellant suggests in this assignment of error that he was confronted by the officers on a casual basis on the street and, thereafter, stopped and searched. These are not the facts in the present case. As we discussed in appellant's first and second assignments of error, a valid search warrant was issued based upon information that appellant was selling crack cocaine from his residence. Accordingly, appellant was detained and searched pursuant to the warrant. Appellant's fourth assignment of error is overruled.
 {¶ 37} Judgment affirmed.
 POWELL, P.J. and WALSH, J., concur. *Page 1