[Cite as *State v. Stambaugh*, 2012-Ohio-5568.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellant

    v.

STACY M. STAMBAUGH

    Appellee

C.A. No.      12CA0027


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.      11-CR-0244

DECISION AND JOURNAL ENTRY

Dated: December 3, 2012

---

DICKINSON, Judge.

INTRODUCTION

**{¶1}** While executing a search warrant, sheriff's deputies found a straw in Stacey Stambaugh's pocket that had drug residue on it. They also found an oxycodone pill in her purse. The Grand Jury indicted Ms. Stambaugh for drug possession and illegal use or possession of drug paraphernalia. She moved to suppress the evidence, arguing that the deputies improperly searched her purse and pockets. The trial court granted the motion, concluding that the searches were outside the scope of the warrant. The State has appealed, arguing that the court incorrectly granted the motion to suppress. We affirm in part because the search warrant did not authorize the deputies to search Ms. Stambaugh's person. We reverse in part because the trial court incorrectly concluded that the deputies were not permitted to search her purse.

BACKGROUND

**{¶2}** Deputy Sheriff Matthew Morris submitted an affidavit for search warrant to a common pleas court judge detailing his investigation into a psilocybin mushroom and marijuana growing operation that he believed was connected with several addresses, including a trailer at 3669 East Sterling Road, Lot #8 in Creston. Based on the affidavit, a judge issued a search warrant for the East Sterling Road "residence . . . as well as the persons inside said structure, the vehicles of persons located therein, and the curtilage of said premises, for certain concealed property, namely: [p]silocybin [m]ushrooms and/or [m]arihuana, or any other controlled substance . . . drug devices, instruments, or paraphernalia used to produce, administer or prepare for sale, controlled substances . . . ." Deputies and drug enforcement agents executed the warrant a few days later.

**{¶3}** According to Agent Theresa McCann, when the search-warrant team arrived, Ms. Stambaugh was sitting in a lawn chair outside the trailer smoking a cigarette. The chair was on a patio near the stairs that led to the door of the trailer. A deputy approached her, told her to put her hands on the trailer, and secured her in handcuffs. Agent McCann then searched Ms. Stambaugh, including going "directly into her pockets." Inside one of the pockets, she found a cut-off piece of straw that she retained for later testing. She then took Ms. Stambaugh inside the trailer so that Ms. Stambaugh could be with her teenage son. She stayed with Ms. Stambaugh as deputies searched the house, including Ms. Stambaugh's purse, which was inside the house.

**{¶4}** Deputy Michael Burkey testified that inside Ms. Stambaugh's purse he found a vial with three different types of unmarked pills. After he explained Ms. Stambaugh's *Miranda* rights, she gave a written statement. According to the statement, the reason she had the piece of straw in her pocket was because she had seen it on the ground outside the trailer and was going

to put it in a trash can when she finished smoking. She wrote that a neighbor gave her the pills that were in her purse after she told the neighbor that she had been having trouble sleeping.

{¶5} Ms. Stambaugh moved to suppress the evidence seized during the raid, including the pills, the piece of straw, laboratory reports derived from the testing of the pills and the straw, her written statement, and any evidence derived from those items. Following a hearing, the trial court found that Deputy Morris's affidavit "[a]rguably" established probable cause to search the trailer. It found that Agent McCann's search of Ms. Stambaugh's pockets, however, was not permitted under the search warrant because the warrant only gave the agent permission to search people inside the trailer. Finding that Ms. Stambaugh's purse was inside her car at the time of the search, the court concluded that the warrant did not give Deputy Burkey permission to search it because it only authorized a search of the vehicles of people who were inside the residence. It, therefore, granted Ms. Stambaugh's motion and suppressed all of the evidence obtained during the raid.

## STANDARD OF REVIEW

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, ¶ 8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. *But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶ 8.

POCKET SEARCH

**{¶7}** The State's first assignment of error is that the trial court incorrectly granted Ms. Stambaugh's motion to suppress on the basis that the search of her person exceeded the scope of the warrant. According to the State, the warrant specifically authorized law enforcement officers to search "the structure located at 3669 East Sterling Road" and "persons . . . upon the curtilage of said property." It has argued that, because Ms. Stambaugh was sitting near the trailer and within the curtilage of the property at the time the warrant was executed, she was subject to search.

**{¶8}** The State has misquoted the search warrant. The warrant authorized the search of the trailer "as well as the persons inside said structure, the vehicles of persons located therein, and the curtilage of said premises, for certain concealed property[.]" "Because search warrants are the product of specific rule and statute . . . , their creation and application must be strictly construed." *State v. Strzesynski*, 6th Dist. No. WD-85-68, 1986 WL 4660, *2 (Apr. 18, 1986); *see State v. Mansfield*, 9th Dist. No. 06CA0022-M, 2007-Ohio-333, ¶ 22 ("The items to be located and seized pursuant to a search warrant must be identified with sufficient particularity."). Under the plain language of the warrant, only people "inside [the] structure" were allowed to be searched. Ms. Stambaugh was not inside the trailer when agents executed the warrant. Accordingly, the search of her person was outside its scope. It, therefore, was a warrantless search. *See State v. Morrison*, 8th Dist. No. 88129, 2007-Ohio-3895, ¶ 9. This case is distinguishable from *State v. McClendon*, 12th Dist. No. CA2006-06-025, 2007-Ohio-1656, because the search warrant in that case specifically provided that police could search "any person found on the premises," not just "inside [the] structure" as in this case *Id*. at ¶ 4.

{¶9} "[W]arrantless searches are 'per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions.'" *State v. Kessler*, 53 Ohio St. 2d 204, 207 (1978) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)). The State has argued that the warrant for the search of the curtilage implicitly gave law enforcement authority to conduct investigative detentions of anyone they found on the premises who could be reasonably connected to the property. While this justification may have allowed the agents to stop Ms. Stambaugh and pat her down for weapons, that is not what happened in this case. The agents who executed the warrant ordered Ms. Stambaugh to put her hands against the wall of the trailer, handcuffed her, and went "directly into her pockets" to look for contraband. *See State v. Jordan*, 2d Dist. No. 05CA0004, 2006-Ohio-1813, ¶ 26 (explaining that, even if an investigatory detention is justified, a frisk for weapons is only authorized if there are reasonable grounds to believe that the detainee is armed and dangerous). The facts of this case do not resemble an investigatory detention followed by a limited search for weapons.

{¶10} The State has argued that the search of Ms. Stambaugh's person was also authorized under *State v. Forts*, 107 Ohio App. 3d 403 (9th Dist. 1995). In *Forts*, police obtained a warrant to search Sandra Forts' residence for drugs as well as anyone found "in the residence." *Id*. at 404. Officers ended up stopping and searching Ms. Forts in an alley as she walked toward the residence a few feet from the door. We upheld the trial court's denial of her motion to suppress, concluding that the search warrant should not be applied literally because Ms. Forts was "reasonably identifiable with the purpose of the warrant" and "was in fact heading back into the residence" at the time she was stopped. *Id*. at 406. In this case, there is nothing in Deputy Morris's affidavit or that was observed by agents before they executed the warrant to

suggest that Ms. Stambaugh was connected with the drug activity suspected at the trailer. *See id*. We, therefore, conclude that *Forts* is distinguishable.

{¶11} The trial court correctly determined that the search of Ms. Stambaugh's person was outside the scope of the search warrant. The State has failed to establish that any of the recognized exceptions to the warrant rule applies. The State's first assignment of error is overruled.

PURSE SEARCH

{¶12} The State's second assignment of error is that the trial court's findings of fact and conclusions of law are not supported by competent, credible evidence. Specifically, it has argued that the court mistakenly found that Ms. Stambaugh's purse was inside her vehicle, not the trailer. It has argued that, because of the mistake, the court incorrectly concluded that Deputy Burkey did not have authority to search the purse. According to the State, because the purse was in the trailer at the time agents executed the warrant, it was within the scope of the search.

{¶13} Ms. Stambaugh has conceded that the trial court mistakenly found that her purse was inside of her car instead of the trailer. She has argued, however, that the entire search warrant was improper because there was insufficient evidence connecting the trailer with criminal activity.

{¶14} A court issuing a search warrant is required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St. 3d 325, paragraph one of the syllabus (1989) (quoting *Illinois v. Gates*, 462

U.S. 213, 238 (1983)). "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant . . . . a reviewing court is simply to ensure that the [trial court] had a substantial basis for concluding that probable cause existed." *Id.* at paragraph two of the syllabus. "[R]eviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.* at 330 (citing *Gates*, 462 U.S. at 237 n. 10).

{¶15} In his affidavit, Deputy Morris wrote that, in December 2010, the Medway Drug Enforcement Agency learned from a confidential informant that Brian Brown was a supplier of psilocybin mushrooms. Three months later, the informant provided the agency with a bag of chocolate candy that contained ground-up psilocybin mushrooms that he claimed to have received as a gift from Mr. Brown. Deputy Morris provided details about the various places that Mr. Brown grew psilocybin mushrooms, Mr. Brown's assistants, and the controlled purchases that he and other agents had made from Mr. Brown while undercover. He further described what he had learned from Mr. Brown about Mr. Brown's marijuana and psilocybin-mushroom growing operations.

{¶16} Regarding the trailer on East Sterling Road, Deputy Morris wrote that it belongs to Justin Graham, from whom he made a controlled purchase of Oxycodone. He wrote that, in April 2011, agents observed Mr. Brown and Mr. Graham carrying two Rubbermaid containers into the trailer that were identical in appearance to two containers with psilocybin spores that Mr. Brown had with him during a controlled purchase. Four days later, Mr. Brown told Deputy Morris during another controlled purchase that he had been living at the trailer for the past four days. Mr. Brown's statement that he was living at the trailer was consistent with a statement that

Mr. Brown made to Deputy Morris during another conversation in which he said he was living in Creston.

{¶17} Two weeks after the controlled purchase in which Mr. Brown told Deputy Morris that he was living at the trailer, Deputy Morris attempted to make another controlled purchase from Mr. Brown, but the mushrooms were not ready yet. At the end of the meeting, Mr. Brown asked the deputy to drive him to the East Sterling Road trailer.

{¶18} Deputy Morris's affidavit provided extensive information about Mr. Brown's psilocybin mushroom and marijuana growing operations. It also provided facts suggesting that Mr. Brown had moved some of his mushroom production to the East Sterling Road trailer and that he was living at the trailer. Upon review of the affidavit, we conclude that it gave the common pleas court judge a substantial basis on which to find that there was a fair probability that the trailer contained contraband. We, therefore, reject Ms. Stambaugh's argument that the search warrant was not supported by probable cause.

{¶19} The trial court incorrectly found that Ms. Stambaugh's purse was in her car at the time of the execution of the search warrant. Because it was actually inside the trailer and was a place in which drugs or drug devices could be found, Deputy Burkey had authority to search it. The State's second assignment of error is sustained.

{¶20} Because the trial court concluded that the search of Ms. Stambaugh's purse and person were unauthorized, it suppressed, without further analysis, all of the evidence that flowed from the seizures, including the lab reports and Ms. Stambaugh's written statement. In light of the fact that the search of the purse was proper, we remand this matter to the trial court so that it may consider, in the first instance, whether the lab reports and written statement should be suppressed for the other reasons Ms. Stambaugh advanced in her motion to suppress.

CONCLUSION

**{¶21}** The search warrant gave law enforcement personnel authority to search anyone inside the trailer, but not on the curtilage of the property. The trial court incorrectly found that Ms. Stambaugh's purse was inside her car. The judgment of the Wayne County Common Pleas Court is affirmed in part and reversed in part, and this case is remanded for further findings of fact and conclusions of law regarding Ms. Stambaugh's motion to suppress.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURRING.</u>

{¶22} While I concur in the majority's resolution of the first assignment of error, I write separately in regard to the second assignment of error. In light of Ms. Stambaugh's concession that the trial court mistakenly determined that her purse was found inside her car, I would remand this matter for the trial court to make the initial determination regarding the legality of the search given that the purse was actually found inside the trailer. I would not analyze that issue in the first instance.

<u>APPEARANCES:</u>

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellant.

CLARKE W. OWENS, Attorney at Law, for Appellee.