[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 85.]

THE STATE OF OHIO, APPELLEE, *v.* KINNEY, APPELLANT.

[Cite as *State v. Kinney*, 1998-Ohio-425.]

*Criminal law—Search and seizure—Search warrant authorizing the search of "all persons" on a particular premises does not violate the Fourth Amendment requirement of particularity, when.*

A search warrant authorizing the search of "all persons" on a particular premises does not violate the Fourth Amendment requirement of particularity if the supporting affidavit shows probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant.

(Nos. 97-1175 and 97-1176—Submitted June 9, 1998—Decided September 2, 1998.)

APPEAL from and CERTIFIED by the Court of Appeals for Cuyahoga County, No. 71353.

————————

{¶ 1} On February 22, 1996, Detective Ronald Ehrbar of the Cleveland Police Narcotics Unit obtained a search warrant for an apartment located at 673 East 92nd Street, Upstairs-North, number 3, in Cleveland. In the affidavit supporting his request, Detective Ehrbar informed the issuing court of the following matters giving probable cause for the search. Ehrbar had been a Cleveland police officer for seventeen years and a detective for over three years. Ehrbar had experience and training giving him knowledge of the methods used by those trafficking in narcotics. Ehrbar had received information that the premises in question was being used to sell cocaine. He, therefore, conducted surveillance of the apartment for seventy-two hours and noticed frequent visitors who would park

their cars, go upstairs, and stay less than five minutes. This pattern occurred both day and night and, in Ehrbar's experience, indicated narcotics trafficking.

{¶ 2} Within the seventy-two hours prior to the issuance of the search warrant, police used a Confidential Reliable Informant ("CRI") to make a controlled purchase of cocaine at the premises under surveillance. The CRI purchased cocaine at the apartment and identified the seller as a man known as "Big Nate," a short, heavy-set black male, approximately forty years old.

{¶ 3} In his affidavit, Detective Ehrbar maintained that drugs were frequently carried on the persons of those present at locations where drugs were used, kept, or sold, and that persons who traffic in drugs frequently kept weapons on their person or within their possession. Further, Ehrbar asserted the necessity of conducting a search at night to prevent evidence from being concealed and for the safety of the officers. Based upon this affidavit, the reviewing court issued a warrant authorizing a search of the "premises, its curtilage, common and storage areas and any person present therein."

{¶ 4} On February 23, 1996, police executed the February 22, 1996 search warrant, seized contraband, and arrested "Big Nate." Five days later on February 28, 1996, Detective Ehrbar's partner, Detective Thomas B. Parkinson of the Cleveland Police Narcotics Unit, obtained a second search warrant for the same apartment. In his supporting affidavit, Detective Parkinson informed the issuing court of the following matters giving probable cause for the search. Parkinson had twenty-eight years' experience with the Cleveland Police Department, including fifteen years as a detective assigned to the narcotics unit. Parkinson stated that on or about February 23, 1996, a search warrant was executed at the above-described premises. Further, Parkinson averred that cocaine and contraband were seized and one individual ("Big Nate," a.k.a. Nathaniel Braxton) was arrested. In addition, Parkinson stated that within the past twenty-four hours, he was contacted by a CRI who had always proven to be reliable in the past; the CRI told him that within the

past forty-eight hours, "Big Nate" had contacted the CRI and indicated that he wanted to sell cocaine. Based upon this affidavit, the reviewing court issued a second search warrant for the same apartment, authorizing a search of the "premises, common areas, curtilage, persons, and containers therein."

{¶ 5} Police executed the second warrant later that night. Appellant, Earnest J. Kinney (defendant), was among those present at the time of the execution of the search warrant. Police searched defendant and, after finding fourteen "rocks" of crack cocaine on his person, arrested him. Defendant was indicted on April 25, 1996 for possession of cocaine, with a specification of a prior drug conviction, and for possession of criminal tools.

{¶ 6} Defendant moved the trial court to suppress the evidence against him, maintaining that police had conducted a general exploratory search, violating his constitutional rights. On September 10, 1996, the trial court held a hearing on the motion. At the hearing, Detective Ehrbar testified that defendant was searched on the authority of the warrant. The trial court granted the motion to suppress, accepting the analysis of the Sixth Appellate District in *State v. Tucker* (1994), 98 Ohio App.3d 308, 648 N.E.2d 557. In *Tucker*, the court held that "a person who just happens to be present in a house that is the subject of a search warrant cannot be made subject to a search solely by the inclusion of [a] 'blanket' phrase in the search warrant, without that person being in any way named or described in the warrant." *Id.* at 310-311, 648 N.E.2d at 558.

{¶ 7} The state appealed from the trial court's judgment, and the Cuyahoga County Court of Appeals reversed. Thereafter, the court, finding its judgment to be in conflict with the judgment of the Sixth Appellate District in *State v. Tucker, supra,* entered an order certifying a conflict. Case No. 97-1176 is now before this court upon our determination that a conflict exists. Case No. 97-1175 is before this court upon the allowance of a motion for a discretionary appeal.

---

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, *George J. Sadd* and *L. Christopher Frey*, Assistant Prosecuting Attorneys, for appellee.

*Wesley A. Dumas, Sr.*, for appellant.

*Darin Thompson*, urging reversal for *amicus curiae*, Ohio Association of Criminal Defense Lawyers.

_____

**LUNDBERG STRATTON, J.**

{¶ 8} The appellate court certified the following issue to this court: "whether [a] search warrant is invalid, as to [a] provision authorizing search of 'all persons' that were at [a] residence during execution of [the] search warrant, as it did not name or particularly describe any person or place." For the reasons stated below, we find that the search warrant was valid.

{¶ 9} The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 10} Section 14, Article I of the Ohio Constitution is nearly identical in its language, and its protections are coextensive with its federal counterpart. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, 766. The issue certified for review in this case touches upon two separate requirements within the Warrant Clause of the Fourth Amendment: (1) places to be searched and people and things to be seized must be described with particularity in the warrant, and (2) probable cause is needed to support the issuance of the warrant.

{¶ 11} Constitutional jurisprudence has long recognized that the Fourth Amendment was drafted, in part, to bar the use of general warrants under federal power. See *Stanford v. Texas* (1965), 379 U.S. 476, 482-486, 85 S.Ct. 506, 510-

512, 13 L.Ed.2d 431, 435-437; *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 325, 99 S.Ct. 2319, 2323-2324, 60 L.Ed.2d 920, 927-928. The Constitution's framers, from experience with the use of general warrants by colonial authorities and from the long history of their use in England, viewed the devices as inimical to the principles of liberty. See Cloud, Searching through History; Searching for History (1996), 63 U.Chi.L.Rev. 1707, 1724-1728.

{¶ 12} One of the chief grievances of the American colonists against England was the use of "writs of assistance" by the King's customs officers. Writs of assistance gave customs officials unbounded authority to seek out violations of the despised colonial tax laws. James Otis's celebrated denunciation of these instruments in 1761 was credited by John Adams himself as sowing one of the first seeds of American independence. See *Stanford*, 379 U.S. at 481-482, 85 S.Ct. at 509-510, 13 L.Ed.2d at 434-435.

{¶ 13} The Fourth Amendment not only reflected the colonists' struggle against these oppressive devices, but also was the product of a centuries-long legal struggle in England against the use of general warrants. The English Common Pleas Court's judgment in *Wilkes v. Wood* (C.P.1763), 19 How.St.Tr. 1153, Lofft 1, 98 Eng.Rep. 489, provides one often-cited precedent for the Fourth Amendment's ban against general warrants. See *Stanford*, 379 U.S. at 483, 85 S.Ct. at 510, 13 L.Ed.2d at 436. The warrant at issue in that case authorized the King's officers to search for unknown individuals responsible for publishing a "seditious and treasonable paper, entitled, The North Briton, No. 45," to apprehend them and seize them and their papers. *Id.* at 483, 85 S.Ct. at 510-511, 13 L.Ed.2d at 436, quoting Lasson, The History and Development of the Fourth Amendment to the United States Constitution (1937) 43. Because the warrant named neither the individuals suspected nor a particular location where they could be found, the warrant, in effect, subjected the whole nation to possible search. The *Wilkes* court

held that the warrant was illegal and awarded damages to Wilkes against the Secretary of State, Lord Hallifax, who had issued the warrant.

{¶ 14} The warrant against Wilkes subjected *any* residence that the King's officers chose to a search. Indeed, it is not clear that abhorrence of the general warrant extended historically to warrants that authorized searches of unnamed people if the particular location was specified. A search confined to a single residence was undoubtedly a vast improvement over the unfettered search of entire towns or whole nations. See Cloud, 63 U.Chi.L.Rev. at 1726, fn. 61, quoting Cuddihy, The Fourth Amendment: Origins and Original Meaning, 602-1791 (1990) 1558 (" 'Why debate probable cause for a specific warrant to search one house when a general warrant laid entire towns open to government purview?' "). The historical current against general warrants did, however, require specificity in a search of papers and effects within a single house, so no warrant could justify a general exploratory search for incriminating documents. See *Entick v. Carrington* (C.P.1765), 19 How.St.Tr. 1029, 2 Wils.K.B. 275, 95 Eng.Rep. 807; *Stanford,* 379 U.S. at 483-485, 85 S.Ct. at 510-512, 13 L.Ed.2d at 436-437.

{¶ 15} Although historical understanding of the need for specificity is more easily shown concerning places searched and objects searched for, courts have reasoned that the requirement extends to the search of individuals as well. See 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (3 Ed.1996) 542-543, Section 4.5(e); *Ybarra v. Illinois* (1980), 444 U.S. 85, 91-92, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245-246 ("Each patron * * * was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. * * * Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search [someone named in the warrant], it gave them no authority to invade the constitutional protections possessed individually by the tavern's customers."). See, also, *Grumon v. Raymond* (1814), 1 Conn. 40, 43 (invalidating a warrant commanding the search of "all persons who

are suspected of having stolen" certain items). Courts have differed, however, over how specific a description is required to authorize the search of an individual. See, generally, Annotation, Sufficiency of Description in Warrant of Person to be Searched (1996), 43 A.L.R.5th 1. Likewise, courts have disagreed whether a warrant authorizing search of "all persons" in a particular location violates the constitutional requirement of particularity.

{¶ 16} In *Ybarra,* 444 U.S. at 91-92, 100 S.Ct. at 342, 62 L.Ed.2d at 245-246, the United States Supreme Court held that a warrant authorizing the search of a public tavern did not authorize police to search individuals not mentioned within the warrant. The court also held that, although police had probable cause to search the establishment and the individual who was named in the warrant, the defendant's "mere propinquity" to those suspected of crime did not independently create probable cause to search him. *Id.* at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245. Thus, the decision in *Ybarra* was grounded upon a lack of probable cause, not upon the failure to describe the defendant with particularity. The court expressly left for another day the consideration of "situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs." *Id.*, 444 U.S. at 92, 100 S.Ct. at 342, 62 L.Ed.2d at 246, fn. 4. Doing so, the court noted that such a warrant might be constitutionally prohibited as an "open-ended" or "general" warrant. *Id.* In the instant case, unlike *Ybarra*, the warrant explicitly included "any person" on the premises within its scope. Thus, the question left unaddressed by the *Ybarra* court is now squarely before this court.

{¶ 17} The Ohio Association of Criminal Defense Lawyers ("Association"), as *amicus curiae*, contends that the warrant used to search defendant was just such a "general warrant." Thus, the Association urges us to invalidate the warrant as violating the particularity requirement of the Fourth Amendment. It argues that the warrant was invalid, regardless of whether the police

showed, in the supporting affidavit, that probable cause existed for every unnamed person who might be present in the apartment. Even if issued upon probable cause, the Association contends, a general warrant would still violate the Fourth Amendment.

*Drug Trafficking Residences*

{¶ 18} "Illicit drug trafficking" is "now of epidemic proportion." *People v. Thurman* (1989), 209 Cal.App.3d 817, 822, 257 Cal.Rptr. 517, 519. Individuals who are present in a drug trafficking residence raise special concerns for law enforcement. A drug trafficking residence often has more than one person on the premises. Individuals may be present for the preparation and packaging of the drugs. Some are present to collect cash, others to protect drug dealers. Some have come to purchase drugs. Most occupants are armed and dangerous. Combined, these concerns involve the safety of all individuals on the premises, since drugs and concealed weapons are involved. This is far different from a general exploratory search.

{¶ 19} In *Commonwealth v. Smith* (1976), 370 Mass. 335, 348 N.E.2d 101, the Massachusetts Supreme Judicial Court held that a warrant authorizing the search of "any person present" was valid where the affidavit showed that heroin was being sold from an apartment subjected to search under warrant. *Id.*, 370 Mass. at 344, 348 N.E.2d at 106. In that case, as here, both information from an informant and police surveillance indicated a steady flow of narcotics purchasers in and out of the apartment. *Id.*, 370 Mass. at 343, 348 N.E.2d at 106. The Massachusetts court reasoned that "the insidious nature of the contraband (heroin) was such as to render it more likely than not that the participants would act in secret and to the exclusion of innocent persons and possible informants." *Id.* at 343-344, 348 N.E.2d at 106. Thus, the court concluded that the issuing magistrate could reasonably have inferred that no innocent parties would be present during the search. *Id.* at 346, 348 N.E.2d at 107, fn. 12.

8

**{¶ 20}** We find the logic of the *Smith* opinion compelling. A "crack house" is used primarily, or even exclusively, for the sale and consumption of crack. In addition, we find it significant that this same residence was searched and cocaine and other contraband were found just five days prior to the search in question. Clearly, even the first search did not deter further drug activity on the premises. Therefore, there was an overwhelming probability that anyone present possessed crack/cocaine or other contraband.

*Probable Cause*

**{¶ 21}** There is some authority for the proposition, adopted in *Tucker* and advanced by *amicus curiae*, that an "all persons" provision is, of itself, too general in its scope and, therefore, violates the Fourth Amendment. The prevailing view, however, is that such a warrant provision may be upheld under limited circumstances. See 1 Ringel, Searches & Seizures, Arrests and Confessions (1988) 5-28, Section 5.6(e); 2 LaFave at 545-546. Where there is probable cause to support the search of every person within the warrant's scope, it will not be held invalid. We believe that the prevailing view is the correct one. Unless the location named in a warrant is too large or inhabited by a multitude of people, a warrant confined to individuals in that location should be particular enough to avoid the unfettered and arbitrary power contemplated in the ban against general warrants. As the New Jersey Supreme Court remarked, "[T]here is none of the vice of a general warrant if the individual is thus identified by physical nexus to the on-going criminal event itself." *State v. DeSimone* (1972), 60 N.J. 319, 322, 288 A.2d 849, 850. See, also, *State v. Reid* (1994), 319 Ore. 65, 71, 872 P.2d 416, 419 (" 'Persons present' is definite and unambiguous.").

**{¶ 22}** Clearly, *probable cause* will more likely exist to support the search of all persons within a private residence than it will for a search of all persons in a place open to the public. In public places, the substantial likelihood that a person with no connection to criminal wrongdoing might be subjected to search makes

most claims of probable cause unsustainable. Accordingly, courts have tended to follow the rule, "The more public a place, the less likely a search of all persons will be sustained." 1 Ringel at 5-48.

{¶ 23} Similarly, a search for illegal drugs is more likely to support a search of all persons than a search for evidence of many other crimes. As Presiding Judge James D. Sweeney recognized in his concurring opinion, probable cause would not likely support the search of all persons on a premises if police were looking for stolen objects that were not easily concealed or transported.

*Particularity*

{¶ 24} Nonetheless, a warrant should still be considered too general if it subjects to search or seizure individuals against whom no probable cause exists. In this regard, the purposes of the particularity requirement and the probable cause requirement intersect. The United States Supreme Court has explained that "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison* (1987), 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72, 80. Thus, the requirement of specificity tailors the authority of a warrant so that those against whom no suspicion lies will remain outside its scope.

{¶ 25} Accordingly, an "all persons" clause may still be "carefully tailored to its justifications" if probable cause to search exists against each individual who fits within the class of persons described in the warrant. The controlling inquiry is whether the requesting authority has shown probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant. If such probable cause is shown, an "all persons" provision does not violate the particularity requirement of the Fourth Amendment. Conversely, if the supporting affidavit does not show probable cause to search

every person on a premises, an "all persons" authorization would violate both the particularity and probable cause requirements of the Warrant Clause.

{¶ 26} This interpretation of the particularity requirement coincides with an understanding that the Fourth Amendment was intended to prohibit only *unreasonable* searches and seizures. Circumstances may not always permit police to name or otherwise describe persons whom they, nevertheless, have ample cause to suspect of criminal wrongdoing because of those persons' presence in a particular place. Granting the government a means of investigating crime under these circumstances does not offend our understanding of what is reasonable. There may be some suggestion of unreasonableness if innocent people, who are not properly suspected of wrongdoing, are unfairly caught in the dragnet. Nevertheless, with any warrant, some danger always exists that innocent people will be subject to search for probable cause. This is so simply because probable cause does not require absolute certainty. See *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 309, 25 OBR 360, 367, 496 N.E.2d 925, 935.

{¶ 27} The Constitution has established the test of probable cause as the fulcrum upon which the interests of individual liberty and the legitimate aims of law enforcement will balance. When a magistrate has determined that every person at a particular location is, upon the evidence, properly suspected of wrongdoing or of holding important evidence, the same standard has been applied. Thus, the danger of reaching innocent parties does not, in this regard, render an "all persons" provision in a warrant unreasonable.

{¶ 28} For these reasons, we reject the contention that the warrant through which defendant was searched was invalid, as a general warrant, without regard to any question of probable cause.

### *"All Persons" Provision*

{¶ 29} We must now turn to the question of whether probable cause supported the "all persons" provision in this instance. The state argues that a *per*

*se* rule should permit the use of "all persons" provisions when applied against residences where illegal drugs are being sold. Because an individual can so easily conceal illegal drugs on his or her person, circumstances involving illegal drugs will more likely give rise to probable cause for the search of people.

{¶ 30} The court of appeals certified this case as being in conflict with *State v. Tucker* (1994), 98 Ohio App.3d 308, 648 N.E.2d 557. However, we find that *Tucker* is distinguishable. The only facts in *Tucker* supporting the issuance of the search warrant were (1) a detective with unknown experience signed a request for a search warrant to search a suspected drug trafficking residence; (2) the search warrant was for the residence, a particular person, and for "all persons [who] are at the residence during the execution of the search warrant"; and (3) Tucker was present during the execution of the search warrant. *Id.*, 98 Ohio App.3d at 309, 648 N.E.2d at 557-558.

{¶ 31} Unlike this case, the *Tucker* facts do not show that the private residence was very likely a drug trafficking house and persons within could be armed and dangerous. The facts did not establish the law enforcement experience, especially the narcotics experience of the detective, behind the affidavit. Further, the facts in *Tucker* did not show whether a controlled purchase had been made, or whether an informant had been used, and, if so, the reliability of the informant. In addition, *Tucker* did not demonstrate that the police had performed surveillance of the drug trafficking residence, or that police had ever searched the residence before, or that police knew the defendant prior to the search. Therefore, we find that *Tucker* is clearly distinguishable from the case at bar.

{¶ 32} We note that because two pages were omitted in the transmittal of the record from the trial court to the court of appeals, the court of appeals relied on the incorrect supporting affidavit when it referred to Detective Ehrbar's affidavit. We have since obtained the missing pages directly from the trial court and find that in referring to the proper supporting affidavit, our conclusion is even stronger.

Detective Ehrbar's affidavit supported the first search warrant which was obtained on February 22, 1996 and executed on February 23, 1996, with an arrest made. The search warrant at issue in this case was obtained on February 28, 1996 and executed that same day. The supporting affidavit for the February 28, 1996 search warrant was attested to by Detective Parkinson.

{¶ 33} For the most part, the facts presented in Detective Parkinson's affidavit tend to support the "all persons" provision in the warrant at issue. His affidavit showed that the place to be searched was a private residence, not a public place. Furthermore, the magistrate could sensibly infer that the residence was of modest size from information within the affidavit—such as the facts that it was an apartment, its neighborhood address, and its location on the second floor. See *Commonwealth v. Smith* (1976), 370 Mass. 335, 343, 348 N.E.2d 101, 106. The small, private nature of the premises lends support to a determination of probable cause. See *id.* at 344, 348 N.E.2d at 106. Moreover, because the affidavit showed a pattern of people coming to the apartment for short periods, during daytime and nighttime hours, it appeared probable on the face of the affidavit that anyone within the apartment would have been aware that drug sales were occurring.

{¶ 34} The affidavit gave clear indication, also, of the nature of illegal activity occurring within the apartment, by providing information about the controlled purchase of cocaine through an informant. The nature of the traffic described, with purchasers staying in the apartment for short intervals, reinforced the need for an "all persons" warrant. Further evidence of the necessity of an "all persons" warrant is Detective Parkinson's reference to the February 22, 1996 search warrant that was executed at the same apartment where police seized cocaine and other contraband and made an arrest. Based on these facts, police could not identify who would be in the apartment at the time of the search, but they could be fairly certain that individuals coming to the apartment were somehow involved in the trafficking of cocaine.

**{¶ 35}** The fact that police sought to execute the warrant at night also tends to support the form of the warrant. The possibility of innocent parties being present, either social visitors or work people, was comparatively less at night than it would be during daylight hours. Compare *State v. Wynne* (Minn.1996), 552 N.W.2d 218, 221 ("During the day, relatives, guests or hired workpeople could have been present on the residential premises to be searched.").

**{¶ 36}** Nevertheless, although drug sales from a residence are more likely to create probable cause for a search of all persons within, we reject the *per se* rule that would find probable cause in all such cases. It is not particularly difficult to conceive of residential settings in which drugs are being sold, but within which probable cause does not extend to all the persons present. Indeed, many courts reviewing "all persons" warrants have found no probable cause in particular settings fitting that description. Moreover, aside from the inherent risk of overgeneralization, a *per se* rule would prevent the individualized determination of probable cause by "neutral and detached magistrates." Without such a determination, the resulting warrant would not satisfy the requirements of the Fourth Amendment. See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 449-450, 91 S.Ct. 2022, 2029, 29 L.Ed.2d 564, 573 (Determination of probable cause must be by a "neutral and detached magistrate."); cf. *Richards v. Wisconsin* (1997), 520 U.S. 385, ___, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615, 623 ("[A] blanket rule impermissibly insulates these cases from judicial review.").

*Standard for Issuance of Warrant*

**{¶ 37}** Having rejected a *per se* rule that would support the command of the warrant to search all persons, we must address whether the particular facts described in Detective Parkinson's affidavit supported the form of the warrant used. As already explained, the proper standard for determining this question is whether police demonstrated probable cause to the magistrate that every individual on the subject premises would be in possession of, at the time of the search, evidence of

criminal misconduct. Nevertheless, having announced this standard, we believe that further guidelines may be necessary to aid in its application. Overly elementary determinations of probable cause in issuing "all persons" warrants may jeopardize the constitutional principle set forth in *Ybarra*, that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [a] person." 444 U.S. at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245. Furthermore, issuing magistrates should recognize that probable cause must exist as to any person with a substantial possibility of being on the premises being searched. Otherwise, the "all persons" provision will constitute an invalid general warrant.

**{¶ 38}** We find that the guidelines set forth by the New York Court of Appeals in *People v. Nieves* (1975), 36 N.Y.2d 396, 369 N.Y.S.2d 50, 330 N.E.2d 26, are well considered and helpful for making probable cause determinations on an "all persons" warrant. See *Smith*, 370 Mass. at 345, 348 N.E.2d at 107 (adopting the *Nieves* guidelines). In *Nieves*, the New York court expressed the following:

"An application for this type of warrant must be subjected to rigid scrutiny by the independent Magistrate. It must carefully delineate the character of the premises, for example, its location, size, the particular area to be searched, means of access, neighborhood, its public or private character and any other relevant fact. It must specifically describe the nature of the illegal activity believed to be conducted at the location, the number and behavior of persons observed to have been present during the times of day or night when the warrant is sought to be executed.

"The application should also state whether any person apparently unconnected with the illegal activity has been seen at the premises. The warrant itself must limit the locus of the search to the area in which the criminal activity is believed to be confined and, according to the circumstances, may also specify the time for the search.

"In determining the reasonableness of a particular warrant application, it is appropriate to consider the necessity for this type of search, that is, the nature and importance of the crime suspected, the purpose of the search and the difficulty of a more specific description of the persons to be searched. The risk that an innocent person may be swept up in a dragnet and searched must be carefully weighed." *Id.*, 36 N.Y.2d at 404-405, 369 N.Y.S.2d at 60-61, 330 N.E.2d at 34.

{¶ 39} Using these principles, magistrates may issue warrants authorizing the search of all persons without violating the particularity and probable cause requirements of the Fourth Amendment. In adopting these guidelines, however, we do not intend to make the process of determining the sufficiency of an affidavit a hypertechnical one. When an "all persons" warrant is requested, determination of probable cause will still require practical, common-sense decisionmaking by magistrates. See *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus.

{¶ 40} What makes the existence of probable cause in this case such a close question is the absence of any language in the affidavit indicating "whether any person apparently unconnected with the illegal activity has been seen at the premises." *Nieves*, 36 N.Y.2d at 405, 369 N.Y.S.2d at 60, 330 N.E.2d at 34. Different jurisdictions have reached contrary judgments upon relatively similar facts, depending largely on how courts viewed the evidence touching on this factor.

{¶ 41} Some express indication in the affidavit of whether police had evidence of innocent activity occurring in the apartment would have made a determination of probable cause significantly easier in this case. Evidence, for example, that the apartment provided a residence for children would likely preclude a finding of probable cause as to all persons on the premises. See *Marks v. Clarke* (C.A.9, 1996), 102 F.3d 1012, 1029. Nevertheless, even where there is no express indication that innocent people would not likely be on the search premises,

magistrates ought to be permitted to make common-sense inferences supported by other evidence in the affidavits.

{¶ 42} In the instant case, given the evidence in the affidavit that (1) the premises was small and private, (2) despite a search and seizure of cocaine and other contraband and an arrest five days earlier, crack cocaine sales were ongoing, and (3) the search was going to be conducted at night, the magistrate could have logically concluded that there was no significant possibility that innocent people would be present in the apartment at the time of the search. Thus, there was a substantial basis for the magistrate's determination of probable cause. Because a reviewing court should give deference to the probable cause determination of the issuing magistrate, see *State v. George*, paragraph two of the syllabus, we find that the warrant in this case and the search conducted under its authority did not violate the Fourth Amendment.

{¶ 43} Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, BROGAN, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for RESNICK, J.

_____