[Cite as *State v. Gonzales*, 2014-Ohio-557.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-13-31

      v.

ERNESTO GONZALES,                    O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 13-13-32

      v.

ERNESTO GONZALES,                    O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Fostoria Municipal Court**
**Trial Court Nos. CRB 1200385 A and CRB 1200385 B**

**Judgment Affirmed in Case No. 13-13-31**
**Judgment Affirmed in Part and Vacated in Part in Case No. 13-13-32**

**Date of Decision:  February 18, 2014**

APPEARANCES:

    *Matthew B. Bryant* for Appellant

    *Timothy J. Hoover*  for Appellee

Case Nos. 13-13-31 and 13-13-32

**SHAW, J.**

{¶1} Defendant-appellant Ernesto Gonzales ("Gonzales") appeals the July 2, 2013, judgments of the Fostoria Municipal Court sentencing Gonzales to, *inter alia*, a permanent weapons disability after Gonzales was found guilty of Possession of Marijuana in violation of R.C. 2925.11(C)(3), a minor misdemeanor, and Possession of Criminal Tools, in violation of R.C. 2923.24(A), a first degree misdemeanor.[1]

{¶2} The facts relevant to this appeal are as follows. On April 17, 2012, a "no knock" search warrant was executed at 221 East North Street in Fostoria, Ohio, the residence of Gonzales, his girlfriend, and Gonzales's mother. As part of the search, police recovered 99.9 grams of marijuana, and digital scales.

{¶3} On September 21, 2012, Gonzales was charged with Possession of Marijuana in violation of R.C. 2925.11, a minor misdemeanor, and Possession of Criminal Tools in violation of R.C. 2923.24, a first degree misdemeanor. Gonzales pled not guilty to the charges.

{¶4} On November 26, 2012, Gonzales filed a "Motion to Suppress Evidence," arguing that his Fourth Amendment rights were violated in the search

---

[1] Separate judgment entries were entered for each conviction in this case. These entries were each appealed, and then consolidated for the purposes of appeal. The conviction regarding Possession of Criminal Tools, trial court case number 1200385A, corresponds to appellate case number 13-13-31. The conviction regarding Possession of Marijuana, trial court case number 1200385B, corresponds to appellate case number 13-13-32. We note, however, that there was in fact only one case in the trial court, with two separate counts or offenses, distinguished with the designation "A" and "B".

-2-

and that evidence obtained in the search should be suppressed as "fruit of the poisonous tree." (Doc. 10). On January 15, 2013, the State filed a response to Gonzales's motion. (Doc. 22).

{¶5} On January 15, 2013, a hearing was held on the motion to suppress.[2] At the hearing, Gonzales contended that there was "not a scintilla of probable cause in [the] search warrant[.]" To counter this, the State called Detective Matt Armstrong, who at the time of this investigation, and at the time the search warrant was executed, worked for the Fostoria Police Department.[3]

{¶6} With regard to the probable cause in the search warrant, Detective Armstrong testified that an investigation involving Gonzales began in 2011, based on information received from anonymous sources and reliable confidential informants.[4] (Tr. at 8). Detective Armstrong elaborated further, stating that the "entire time" he was with the Seneca County Drug Task Force, he was "receiving information about Ernesto Gonzales and his brother JoAngelo Gonzales * * * and their involvement in the drug industry." (Tr. at 9). Detective Armstrong testified that he was able to corroborate "most" of that information. (*Id*.)

---

[2] We would note that Judge Repp presided over this case, sitting by assignment.

[3] On cross-examination it was revealed that at the time of this hearing Detective Armstrong worked for the City of Miamisburg. (Tr. at 19).

[4] Reliable confidential informants were testified to be those that had "worked with the Task Force and participated in two or more successful drug transactions." (Tr. at 8-9).

{¶7} Detective Armstrong testified that he received a tip from a reliable confidential informant on April 11, 2012, indicating large quantities of drugs had been stored in the East North Street residence. (Tr. at 16). Detective Armstrong testified that once he had "obtained all this information" he did a "trash pull" where officers "conducted surveillance and took the trash from the curb side of 221 East North Street and went through it." (Tr. at 10). Detective Armstrong testified that while "going through the trash [they] located several marijuana stems and buds." (Tr. at 10). In addition, Detective Armstrong testified that they "located mail for the residence of 221 East North Street" in the trash, indicating that the trash with the marijuana stems and buds came from that address. (*Id.*) Detective Armstrong testified that records indicated Gonzales, his girlfriend Angelica and Ernesto's mother all lived at 221 East North Street. (Tr. at 12).

{¶8} Detective Armstrong testified that on the same day they conducted the "trash pull," a lengthy history "was placed into an affidavit for a search warrant" for 221 East North Street. (Tr. at 9, 13). Detective Armstrong testified that they put in the warrant request that they wanted to do a "no knock" entry into the residence "[b]ecause of * * * the risk of * * * violence." (Tr. at 14). He stated that "[Gonzales and his brother] had a history of being involved with guns[.]" (Tr. at 14). Detective Armstrong also testified that in his experience "drugs and guns go hand-in-hand," that Gonzales had a concealed carry permit, that Gonzales was

involved in the distribution of guns as well as drugs, and that Gonzales had put "video performances on the Internet" wherein Gonzales had multiple firearms. (Tr. at 23, 28, 36).

{¶9} The actual search warrant was not entered into evidence at the suppression hearing. However, defense counsel did acknowledge that he had reviewed the warrant, and he cross-examined Detective Armstrong regarding the contents of the warrant in an attempt to show that probable cause did not exist to support the issuance of the warrant. (Tr. at 19-34).

{¶10} On January 22, 2013, the trial court issued a ruling denying Gonzales's motion to suppress. (Doc. 24). The trial court found that Detective Armstrong had "done a trash pull * * * gathering evidence of drugs and actual drugs with evidence linking that address at 221 East North Street." (Jan. 22, 2013, Tr. at 2). In addition, the court cited the fact that a confidential informant had given information with regard to activity at the residence, and there being "a large store of marijuana" present. (*Id.*) The court found that under the totality of the circumstances, Gonzales's motion should be denied. (*Id.*)

{¶11} On April 12, 2013, Gonzales filed a second motion to suppress, arguing that the search warrant still did not contain sufficient probable cause. (Doc. 35). A hearing on the motion was held on April 18, 2013. At the hearing, Gonzales's counsel contended that he did not have the affidavit used in obtaining

the search warrant available to him in the first suppression hearing, and that he intended to more fully question Detective Armstrong about it. (April 18, Tr. at 4). The State contended that the arguments were the same as in the first suppression motion. The court allowed the parties to submit written arguments, stating that it would issue a written opinion on the matter. (*Id*. at 7-8).

{¶12} Subsequently, on April 18, 2013, the State filed a response to Gonzales's second motion to suppress. On April 24, 2013, Gonzales filed a reply to the State's response, and on April 29, 2013, the State filed a response contra to Gonzales's reply. (Docs. 39-41).

{¶13} On May 2, 2013, the trial court issued a written opinion denying Gonzales's second motion to suppress. In the opinion, the trial court found that "[w]hile the defendant has highlighted some of the inaccuracies in the observations of the informant, the Court * * * does not find that information to be unfounded, without any basis or so remote in time as to be stale. While a dispute over exactly how many marijuana plants that existed in the trailer [sic] may be an important dispute for trial, the inaccuracy does not negate the existence of probable cause for illegal conduct." (Doc. 42). The court did go on to state that although more could have been done to verify information in the affidavit, there was sufficient information in the affidavit to support the warrant. (*Id*.)

{¶14} On July 2, 2013, after his suppression motions were denied, Gonzales withdrew his not guilty pleas and entered no contest pleas to the charges, consenting to a finding of guilt. The trial court accepted Gonzales's pleas, and found him guilty as charged.

{¶15} The trial court proceeded immediately with sentencing. Ultimately Gonzales was sentenced to pay a $150 fine on the Possession of Marijuana conviction, and he was told he was under a "permanent weapons disability." On the Possession of Criminal Tools conviction, Gonzales was sentenced to 30 days in jail, with all 30 days suspended. Judgment entries memorializing and reflecting these sentences were filed that same day, on July 2, 2013. (Docs. 48, 49).

{¶16} It is from these judgments that Gonzales appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S FIRST & SECOND MOTIONS TO SUPPRESS IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS[.]**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO RULE ON ALL OF THE ISSUES RAISED BY APPELLANT IN HIS MOTION TO SUPPRESS—NAMELY THAT THE SEARCH WARRANT WAS OVERLY BROAD AND CONSTITUTED A GENERAL WARRANT IN VIOLATION OF THE FOURTH AMENDMENT[.]**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO INVALIDATE THE WAIVER OF THE NO KNOCK REQUIREMENT AND SUPPRESS ALL EVIDENCE OBTAINED[.]**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN THE SENTENCING OF APPELLANT BY PLACING APPELLANT ON A PERMANENT WEAPONS DISABILITY WITH NO STATUTORY AUTHORITY.**

*First Assignment of Error*

{¶17} In Gonzales's first assignment of error, he argues that the trial court erred in denying his suppression motions. Specifically, Gonzales contends that under the totality of the circumstances, Detective Armstrong's affidavit failed to establish a substantial basis for the issuing judge's conclusion that there was a fair probability that illegal drugs would be found in Gonzales's residence. In addition, Gonzales contends that the affidavit failed to establish that there was any "current" illegal activity at the subject residence, and that the affidavit relied on "guilt by association," thereby "misleading" and "confusing" the issuing judge.

{¶18} The Fourth Amendment to the United States Constitution requires that warrants issue only "upon probable cause." Probable cause "means less than evidence which would justify condemnation," so that only the "probability, and not a prima facie showing of criminal activity is the standard of probable cause." *State v. George*, 45 Ohio St.3d 325, 329 (1989) (internal quotation marks omitted).

To search for evidence of a crime there must "be a nexus * * * between the item to be seized and criminal behavior" as well as "cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden, MD. Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650 (1967).

{¶19} When determining "the sufficiency of probable cause in an affidavit submitted to support a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *George* at paragraph one of the syllabus, quoting *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332 (1983). A reviewing court should not conduct a *de novo* review of a magistrate's determination of probable cause. Rather, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," according "great deference to the magistrate's determination of probable cause" and resolving "doubtful or marginal cases in this area * * * in favor of upholding the warrant." *Id.* at paragraph two of the syllabus.

{¶20} In sum, on appeal, when we are reviewing the issuing judge's determination of probable cause, the review is limited to ensuring that the judge

"had a substantial basis for concluding that probable cause existed." *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, ¶ 19 citing *George*.

{¶21} The affidavit used in supporting the acquisition of the search warrant in this case contained the following information.

> **2. During my employment with the Fostoria Police Department, and as an Agent with the Seneca County Drug Task Force – METRICH Enforcement Unit, I, along with other Agents * * * have become familiar with multiple subjects identified as * * * Ernesto R. Gonzales * * * who are actively participating in a conspiracy involving the distribution of marijuana, cocaine, and firearms.**
>
> **\* \* \***
>
> **18. In October of 2011, this officer received information from a confidential source * * * that JoAngelo Gonzalez is involved in the distribution of illicit drugs and that he is affiliated with numerous guns. * * ***
>
> **\* \* \***
>
> **21. * * * The source of information further stated that JoAngelo utilizes the stash houses to store his drugs and guns but that he/she does not believe he keeps money at these houses.**
>
> **\* \* \***
>
> **32. During my employment * * * it has become known to me through other officers * * * that Mona Hernandez is JoAngelo Gonzales' mother and that JoAngelo used to live with his mother at 221 E. North St. * * *[.]**
>
> **\* \* \***

**34.** On October 23ʳᵈ, 2011, this affiant received information from a confidential source who reported that * * * JoAngelo told the source that he uses multiple residences that the police would never suspect to store "stuff."

**35.** On November 16ᵗʰ, 2011, while conducting surveillance this affiant observed Antonio Brown driving a black GMC Yukon and arrive at Ernesto Gonzales' residence located at 221 E. North St. * * *[.] After staying for a short period of time, this affiant observed Mr. Brown exit the residence and begin driving again. This affiant was aware and had confirmed that Mr. Brown's license was suspended and at that time request a road patrol officer of the Fostoria Police Department stop the vehicle. Mr. Brown was stopped and arrested for driving under suspension. After arriving at the jail he was found to be in possession of suspected marijuana and charged with conveyance of contraband into a correctional facility.

**36.** During the stop officer's [sic] observed a strong odor of marijuana coming from the vehicle. This affiant then obtained a search warrant for the vehicle which was executed later that day. Upon executing the search warrant officers located suspected marijuana in the vehicle.

* * *

**47.** Throughout this investigation I have found that JoAngelo Gonzales along with Ernesto Gonzales and Antonio Brown not only have a drug affiliation but are also all affiliated with Fam Life Entertainment a music group/record label of which Jo Angelo Gonzales is the CEO.

**48.** Throughout this investigation I have further observed multiple music video's produced by Fam Life Entertainment. The music videos depict JoAngelo Gonzales, Ernesto Gonzales, Antonio Brown and multiple other persons in possession of multiple firearms.

* * *

-11-

**50. On April 11th, 2012 this Affiant received information from confidential informant CI-10-022 regarding JoAngelo and Ernesto Gonzales. CI-10-022 reported that JoAngelo and Ernesto store large quantities of marijuana at their house on E. North St. CI-10-022 further reported that he/she has recently been told by a close family member of JoAngelo, that within the past three months, he/she personally observed a closet full of marijuana in the upstairs bedroom of the residence.**

**51. The \* \* \* METRICH Enforcement Unit has been utilizing \* \* \* CI-10-022 for approximately 1.5 \* \* \* years, during which time, CI-10-022 has given law enforcement officers reliable confidential information which has allowed \* \* \* officers to confiscate & seize a substantial amount of illicit drugs from suspects operating in Seneca County Ohio. I have found that through these investigations while utilizing confidential informant, CI-10-022, that the information I have received \* \* \* has been reliable and accurate.**

**52. It has been common knowledge that Mona Hernandez is JoAngelo and Ernesto Gonzales' mother and that she resides at 221 E. North St \* \* \* [.] Further, Ernesto Gonzales and his girlfriend Angelica A. Hernandez \* \* \* also reside at 221 E. North St. \* \* \* with Ernesto's mother Mona.**

**53. According to OHLEG, Ernesto R. Gonzales' listed address on his \* \* \* license is 221 E. North St.; Angelica A. Hernandez listed her address \* \* \* [as] 221 E. North St.; Mona Hernandez listed address on her \* \* \* license is 221 E. North St. \* \* \*[.]**

**54. On April 17th, 2012 \* \* \* METRICH \* \* \* conducted a covert curbside investigative technique at the residence located at 221 E. North St., \* \* \* Upon doing so this affiant confiscated, suspected marijuana roaches and stems and documents of mail addressed to Angelica Hernandez at the address of 221 E. North St. \* \* \*[.] The suspected marijuana was submitted to Det. Joseph of the Seneca County, Sheriff's Office for chemical testing. This officer later learned that the suspected marijuana**

**tested positive as Cannabis Sativa L commonly known as marijuana.**

**55.    Through my experience * * * I believe that the corroborating drug information & drug intelligence that I have received throughout this investigation from Confidential informants, confidential sources of information, and/or Law Enforcement officers as set forth in this affidavit, that it is evident that JoAngelo Gonzales, Ernesto R. Gonzales, Angelica A. Hernandez * * * are presently involved in the possession and distribution of illicit drugs from the residences located at 221 E. North St. * * * [.]**

**\* \* \***

**63.  It is also requested that if the Search Warrant is granted by the Court, the affiant of this Search Warrant would request for a waiver of the Statutory Pre-condition for Non-consensual entry, pursuant to ORC 2933.231, in relation to this Search Warrant.  I have good cause to believe that there is a risk of serious physical harm to the Law Enforcement Officers or other authorized individuals who will execute the warrant if they are to comply with the statutory pre-condition for non-consensual entry.  I have found through my training & experience with investigating drug related activities that persons involved in such drug activity often carry or have ready at hand, loaded firearms that are used for protection of their money and assets.  The person's [sic] who I believe pose such serious physical harm is Ernesto R. Gonzales, Angelica A. Hernandez and Mona Hernandez * * *[.]**

(Doc. 35, Ex. A).

{¶22} In addition to the cited portions of the affidavit, the affidavit contained a significant amount of other information related to the investigation of JoAngelo Gonzales and others, including information regarding another "stash

-13-

house" that had been raided, yielding 40 pounds of marijuana, digital scales, cocaine, ecstasy, prescription drugs, and US currency. (*Id.*)

{¶23} On appeal, Gonzales challenges whether the affidavit in support of the search warrant was sufficient for the issuing judge to find that there was a substantial basis probable cause existed. Gonzales also contends that the affidavit failed to establish any "current" illegal activity at the residence in question. Further, Gonzales argues that the affidavit relied on "guilt by association."

{¶24} Despite Gonzales's arguments, Detective Armstrong's affidavit contained several provisions specific to Gonzales, indicating drugs were at the residence in question. First, Detective Armstrong's affidavit expressed that Gonzales was involved in the illegal sale of drugs along with JoAngelo. The affidavit further stated that Antonio Brown had been found with marijuana after leaving Gonzales's residence, having been there only for a short time.

{¶25} In addition, a reliable confidential informant provided information that Gonzales's residence had been used to store a large quantity of marijuana. Only six days after receiving this information, Detective Armstrong did a "covert curbside investigation technique" or a "trash pull," taking the trash from Gonzales's residence, finding marijuana. The same day the trash pull was done, Detective Armstrong sought the search warrant.

{¶26} Under the totality of the circumstances, we find that there was sufficient evidence in the affidavit for the trial judge to find that there was a substantial basis probable cause existed, and that it was timely, based on the trash pull.

{¶27} Moreover, although Gonzales argues that the affidavit relied on "guilt by association," the inclusion of a substantial amount of background information related to JoAngelo and the investigation that concerned him does not negate the facts specific to Gonzales and his residence. This is particularly true, as Detective Armstrong's affidavit specifically stated that Gonzales was involved with JoAngelo. Furthermore, there is no indication that the judge issuing the warrant was confused about who the warrant was regarding, as Gonzales and his residence are explicitly listed on the search warrant. Therefore, we cannot find that the affidavit relied improperly on "guilt by association."

{¶28} Accordingly, Gonzales's first assignment of error is overruled.

*Second Assignment of Error*

{¶29} In Gonzales's second assignment of error, he argues that the trial court erred by failing to rule on all of the issues raised in his suppression motion. Specifically, Gonzales argues that the trial court failed to rule on his argument that the search warrant was overly broad and constituted a "general warrant" in violation of the Fourth Amendment. In addition, Gonzales takes exception to the

warrant naming three people to be searched as well as any/all other individuals present at the residence.

{¶30} Pursuant to the Fourth Amendment and Section 14, Article I, Ohio Constitution, only warrants "particularly describing the place to be searched and the person or things to be seized" may issue. "The manifest purpose of this particularity requirement was to prevent general searches. * * * [T]he requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, (1987). By requiring a particular description of the items to be seized, the Fourth Amendment "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).

{¶31} Particularization with respect to the things to be seized actually encompasses two distinct, albeit related, concerns: "one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take * * * and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." (Citations omitted.) *United States v. Upham* (C.A.1, 1999), 168 F.3d 532, 535. "Thus, 'an otherwise unobjectionable description of the objects to be seized is defective if it is broader

than can be justified by the probable cause upon which the warrant is based.'"

*State v. McCrory*, 6th Dist. Wood No. WD-09-074, 2011-Ohio-546, ¶ 23, quoting

2 LaFave, Search and Seizure (4 Ed.2004) 607, Section 4.6(a).

**{¶32}** In determining whether a search warrant satisfies the Fourth Amendment's particularity requirement, reviewing courts employ a standard of practical accuracy rather than technical precision. *United States v. Otero* (C.A.10, 2009), 563 F.3d 1127, 1132. "[A] search warrant is not to be assessed in a hypertechnical manner [and need not satisfy the] '[t]echnical requirements of elaborate specificity once exacted under common law pleadings.'" *United States v. Srivastava* (C.A.4, 2008), 540 F.3d 277, 289, quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965). A search warrant will be held sufficiently particular when it enables a searcher to reasonably ascertain and identify the things authorized to be seized. *United States v. Riccardi* (C.A.10, 2005), 405 F.3d 852, 862. "The common theme of all descriptions of the particularity standard is that the warrant must allow the executing officer to distinguish between items that may and may not be seized." *United States v. Leary* (C.A.10, 1988), 846 F.2d 592, 600, fn. 12.

**{¶33}** In this case, the Search Warrant stated as follows:

> **Where there has been filed with me an Affidavit, of which the following is a copy attached and made a part hereof just as fully as if rewritten hereon.**

-17-

**These are, therefore, to command you in the name of the State of Ohio, with the necessary and proper assistance, to enter within three days, (in the night time), 221 E. North St. City of Fostoria \* \* \* a two story, single unit dwelling, white in color, with a covered red brick porch on the north side of the residence & any curtilage thereof. \* \* \* That being the residence of Ernesto R. Gonzales, Angelica A. Hernandez, and Mona Hernandez. Also, any persons, vehicles on the property and vehicles registered to persons or under the control of persons found inside the residence at the time the warrant is executed \* \* \* and there diligently search for the said goods and chattels, or articles, to-wit: Any illegally possessed drugs or controlled substances, firearms, weapons, drug paraphernalia, photos depicting drug use or trafficking, money, money obtained by drug sales, records of drug sales, items used to prepare drugs for sale of shipment, containers, safes, lock boxes used to store drugs, documents to indicate possession or control of premises. Any computers, computer discs, televisions, DVD's [sic], DVD players, digital camera's [sic] cell phones and any other electronic equipment with purpose to store data. Any other items or instrumentalities used to facilitate drug use, drug trafficking, or the crime under investigation, and that you bring the same or any part thereof found on such search before me to be disposed of and dealt with according to law.[5]**

{¶34} On appeal, Gonzales first contends that the warrant was overbroad because it gave officers "free reign to search and seize any materials they deemed necessary[.]" (Appt's Br. at 18). However, despite Gonzales's argument, we find that the warrant was sufficiently specific, as it clearly indicated items to be

---

[5] The affidavit said the following with respect to evidence of crimes expected to be uncovered.

> **Before me, the undersigned Judge[,] \* \* \* personally appeared Det. Matthew D. Armstrong who, \* \* \* says that he has good cause to believe and does believe that the offense of *Drug Abuse ORC 2925.11(A)*, *Drug Trafficking ORC 2925.03(A)*, *Possession of Drug Paraphernalia ORC 2925.14(C)(1)*, has been committed and that the persons responsible have never been placed in jeopardy thereof \* \* \*[.]**

searched and seized that may have yielded evidence of drug possession or drug trafficking. As the warrant did not allow intrusion into unrelated matters, we cannot find any lack of particularity. *See State v. Hale*, 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, ¶ 77.

{¶35} Nevertheless, even if the warrant had failed the particularity test, the "good-faith exception" to the exclusionary rule would apply. *State v. Hale*, 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, ¶ 80. Under this exception, evidence is not barred, where officers act in "objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate," but the warrant is "ultimately found to be unsupported by probable cause." *State v. George,* 45 Ohio St.3d 325, paragraph three of the syllabus, following *United States v. Leon*, 468 U.S. 897 (1984). "This exception has also been applied to allow use of evidence where the warrant itself is supported by probable cause, but fails the particularity requirement." *Hale*, at ¶ 80 citing *State v. Gritten*, 11th Dist. Portage, No. 2004-P-0066, 2005-Ohio-2082, ¶¶ 19-21. Thus, Gonzales's argument is not well-taken.

{¶36} Next, Gonzales argues that the search warrant does not meet the criteria for an "all persons" warrant pursuant to *State v. Kinney,* 83 Ohio St.3d 85 (1998). In *State v. Kinney,* the Supreme Court of Ohio held that "all persons on the premises" warrants are valid and do not violate the Fourth Amendment in limited circumstances. *Id.* at 90. "Where there is probable cause to support the

-19-

search of every person within the warrant's scope, [an all persons on the premises warrant] will not be held invalid." *Id.* In *Kinney*, the Court noted the danger that an "innocent person may be swept up in a dragnet and searched." *Id.* at 95.

{¶37} In addition to probable cause, the court in *Kinney* also mandated a particularity requirement.

> **An "all persons" clause may still be "carefully tailored" to its justifications if probable cause to search exists against each individual who fits within the class of persons described in the warrant. The controlling inquiry is whether the requesting authority has shown probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant. If such probable cause is shown, an "all persons" provision does not violate the particularity requirement of the Fourth Amendment.**

*Id.*

{¶38} In *Kinney*, the Court also stated "all persons" warrants are often appropriate in situations involving drug transactions. "Individuals who are present in a drug trafficking residence raise special concerns for law enforcement." *Id.* at 90. "A drug trafficking residence often has more than one person on the premises * * * [m]ost occupants are armed and dangerous." *Id.* "A search for illegal drugs is more likely to support a search of all persons than a search for evidence of many other crimes." *Id.* at 91.

{¶39} In this case, Detective Armstrong's affidavit detailed his history investigating drug-related offenses and investigating this case in particular.

Detective Armstrong's affidavit indicated his belief that Gonzales was involved in the possession and/or trafficking of drugs, and that people on the premises were likely purchasing drugs, coming and going from the residence, staying for a short period of time.[6] Detective Armstrong's affidavit even detailed one such person who went to the residence in question for a brief stay, and was subsequently found with marijuana. Moreover, Detective Armstrong had done a "trash pull" indicating drugs inside the residence in question. These circumstances are all very analogous to the Twelfth District Court of Appeals Decision in *State v. Quinn*, 12th Dist. No. CA2011-06-116, 2012-Ohio-3123, ¶ 32, wherein the court found a similar "all persons" provision valid. Thus, under these specific circumstances, we cannot find that the "all persons" provision was overbroad.

{¶40} Accordingly, Gonzales's second assignment of error is overruled.

*Third Assignment of Error*

{¶41} In Gonzales's third assignment of error, he argues that the trial court erred by failing to invalidate the waiver of the "no knock" requirement and suppress all evidence obtained. Specifically, Gonzales contends that there was no

---

[6] With regard to this issue, the affidavit said specifically

**It is requested that the Search Warrant be granted for any persons found at the residence at the time the search warrant is executed pursuant to ORC 2933.32. Due to the fact, I have found through my training & experience that persons who are found in residences which conduct drug related activity are usually transient & only stay for short periods of time, just enough time to purchase drugs and they then leave. I have also found * * * that being drugs & criminal histories of persons who are normally found inside drug related residences, the drugs are & can be concealed inside persons pants & underwear.**

indication that law enforcement officers executing the warrant were at risk of serious physical harm.

{¶42} In this case, the search warrant included terms waiving the requirements of "knock and announce." In Ohio, the "knock and announce rule" is codified in R.C. 2935.12. "Exceptions exist, but the rule directs police officers executing a search warrant at a residence to first knock on the door, announce their purpose, and identify themselves before they forcibly enter the home." *State v. Oliver,* 112 Ohio St.3d 447, 2007-Ohio-372, ¶ 9 citing *Wilson v. Arkansas*, 514 U.S. 927, 935–936 (1995).

{¶43} R.C. 2933.231(C) authorizes a judge or magistrate issuing a search warrant to waive the requirement

> **only if he determines there is probable cause to believe that, if the law enforcement officers or other authorized individuals who execute the warrant are required to comply with the statutory precondition for nonconsensual entry, they will be subjected to a risk of serious physical harm and to believe that the address of the dwelling house or other building to be searched is the correct address in relation to the criminal offense or other violation of law underlying the issuance of the warrant.**

{¶44} On appeal, Gonzales contends that there was no risk of serious physical harm to law enforcement officers in this case to justify the issuance of a "no knock" provision in the warrant.

**{¶45}** Detective Armstrong's affidavit contained information that he had witnessed numerous "music videos" depicting Gonzales in possession of multiple firearms. Detective Armstrong's affidavit stated that "Firearms are also found on persons involved in this type of activity and at the premises where this activity occurs for the protection of the fruits of their illegal activity." Detective Armstrong's affidavit indicated Gonzales had a criminal history of "inciting violence." In addition, Detective Armstrong testified that in in his experience drugs and guns are interrelated. Moreover, Detective Armstrong's affidavit contained information that Gonzales was involved in the drug trade with his brother JoAngelo, and that JoAngelo was affiliated with "numerous guns." The affidavit also contained information that the stash houses were used to store drugs and guns. Thus, we find there was sufficient information to establish a risk of serious physical harm to police officers.

**{¶46}** However, even if this information was not sufficient to establish a risk of serious physical harm to law enforcement officers, Gonzales directs us to no law stating that an invalid "no knock" provision requires the application of the exclusionary rule. To the contrary, the very case Gonzales directs us to, *State v. Nunez*, 6th Dist. No. 11-08-03, 2008-Ohio-6806, cites to multiple cases out of other districts from the Ohio Appellate Courts wherein the courts have found that an invalid "no knock" provision does not invoke the exclusionary rule. *Nunez* at ¶

-23-

52 citing *State v. Macke III,* 12th Dist. Clinton No. CA2007–08–033, 2008-Ohio-1888, ¶ 29–31; *State v. Lam,* 2d Dist. Montgomery No. 21787, 2007-Ohio-5664, ¶ 8; *State v. Gilbert,* 4th Dist. Scioto No. 06CA3055, 2007-Ohio-2717, ¶ 39; *State v. Marcum,* 7th Dist. Columbiana No. 04 CO 66, 2006-Ohio-7068, ¶ 15. Gonzales requests that we be the first to apply the exclusionary rule to an invalid "no knock" provision. Even if the no knock provision was invalid, we decline to extend the law here.

{¶47} Under the facts and circumstances of this case, we cannot find that the trial court erred in overruling Gonzales's motion to suppress on this matter. Accordingly, Gonzales's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶48} In Gonzales's fourth assignment of error, he argues that the trial court erred in sentencing Gonzales "to a permanent weapons disability." Specifically, Gonzales contends that "[n]othing in the Ohio Revised Code merits sanctioning [Gonzales] to such a degree as to impair his rights to gun ownership."

{¶49} At Gonzales's sentencing hearing, when sentencing Gonzales, the trial court stated "in the [Possession of Marijuana] case $100 fine, six month operator's license suspension, permanent weapons disability." In the trial court's judgment entry on Gonzales's Possession of Marijuana conviction, there is a box checked indicating "[t]he defendant is placed under a permanent weapons

-24-

disability pursuant to Sect. 2923.13 of the Ohio Revised Code." Gonzales contends on appeal that the weapons disability was improper.

**{¶50}** The current version of R.C. 2923.13, reads as follows.

**(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:**

**\* \* \***

**(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.**

**{¶51}** This statute was amended, effective September 30, 2011. Prior to the amendment, R.C. 2923.13(A)(3) read, "The person is under indictment for or has been convicted of *any offense* involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse \* \* \*[.]" (Emphasis Added.) In the amendment to the statute, the legislature modified the language from *any* possession offenses to include only *felony* offenses.

**{¶52}** Prior to the amendment, conviction of a misdemeanor drug possession charge would have subjected Gonzales to a weapons disability pursuant

to the statute. Now, however, Gonzales is not under disability automatically by virtue of his conviction.

{¶53} The State attempts to counter this by citing us to the United States Code. Provision 18 U.S.C. § 922(g)(3) is similar in nature to our former R.C. 2923.13(A)(3). The State argues that as a weapons disability is permissible under the US Code, it is an acceptable provision of Gonzales's sentence here. However, given the Ohio Legislature's clear intent to limit the weapons disability to *felony* drug offenses, we cannot find the permanent weapons disability appropriate, and it would be unenforceable under Ohio law.

{¶54} Accordingly, Gonzales's fourth assignment of error is sustained and the limited portion of Gonzales's sentence regarding a permanent weapons disability is vacated as unenforceable under Ohio law.

{¶55} For the foregoing reasons the judgment of the Fostoria Municipal Court in case 13-13-31 is affirmed, and the judgment of the Fostoria Municipal Court in case 13-13-32 is affirmed in part and vacated in part.

*Judgment Affirmed in Case No. 13-13-31,*
*and Judgment Affirmed in Part and*
*Vacated in Part in Case No. 13-13-32*

**ROGERS, J., concurs in Judgment Only as to Assignment of Error 2**
**PRESTON, J., concurs.**

**/jlr**